1:18MJ4145-JDG

## Affidavit in Support of Criminal Complaint

I, Kevin T. Borchert, a Special Agent with the Drug Enforcement Administration ("DEA"), United States Department of Justice, being first duly sworn, depose and state under oath as follows:

1. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, violations of Title 21, United States Code, Sections 841, 843(b), and 846, as well as violations of Title 18, United States Code, Sections 1956 and 1957, and other federal law violations.

2. This affidavit is made in support of a criminal complaint against Tyler Matthew D'Juan HALL for knowingly and intentionally possessing with intent to distribute a controlled substance (crack cocaine, a schedule II controlled substance), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

3. In sum, as set forth more fully below, on July 3, 2018 Affiant and investigators executed a search warrant at HALL's residence and seized the aforementioned controlled substances, which were stored at a desk that was being used as a drug-packaging station.

## Training and Experience

4. I am employed as a Special Agent with the DEA and have been so employed since October 1998. I am currently assigned to the DEA's Detroit Field Division, Cleveland District Office Heroin Enforcement Group.

5. Upon joining the DEA, I received training at the DEA Training Academy in Quantico, Virginia. This training addressed the methods by which drug traffickers possess and distribute controlled substances; the manner and means in which they conceal and launder the proceeds from the distribution of controlled substances; the manner and means in which they protect their proceeds and their controlled substances; and the manner and means by which drug traffickers attempt to avoid law enforcement detection of their activities. The controlled substances as to which this training applied included, but were not limited to, marijuana, cocaine, heroin, and methamphetamine.

6. During my law enforcement career, I have received hundreds of hours in specialized training in the enforcement of the drug laws, the investigation of drug trafficking and drug organizations, in drug recognition and terminology, interviewing techniques, financial/money laundering investigations, and the use of electronic surveillance. I have also participated in numerous drug-related investigations, involving the following types of drugs: opiates, cocaine and cocaine base, methamphetamine and crystal methamphetamine, marijuana and others. I am familiar with and have been involved in all normal methods of

investigation, including, but not limited to, visual surveillance, electronic surveillance, informant interviews, interrogation and undercover operations. I have directed confidential sources as well having acted in an undercover capacity myself during the purchase of controlled substances. I have conducted complex conspiracy investigations into known drug trafficking organizations. I have authored numerous Title III affidavits and conducted wiretap investigations – all resulting in the arrest of hundreds of individuals and the seizure of drugs, drug proceeds and physical assets.

7.  From my participation in these investigations, I have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings. Based upon my training and experience, interviews conducted with defendants, informants, and other witnesses to, or participants in, drug trafficking and money laundering activity, I am familiar with the ways in which drug traffickers and money launderers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs, and the ways that drug traffickers and money launderers use cellular telephones, social media applications and other electronic means of communication to facilitate their activity. Drug traffickers and money launderers also use numerical codes and code words to conduct their transactions.  I am also familiar with the ways in

which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, but not limited to, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, and the use of off shore accounts.

8. Similarly, I am aware that drug traffickers routinely use and have at their disposal multiple vehicles registered in fictitious names and/or the names of third parties. In addition to concealing their drug trafficking activities, the use of vehicles in this manner is also an attempt to conceal assets from law enforcement in order to prevent the forfeiture of those assets.

## Sources of information

9. I make this affidavit based upon: information that I have learned from discussions with other investigators; the review of written reports of investigations, arrests, and seizures; execution of arrest and search warrants; interviews of defendants; and the review of a search warrant affidavit by state and local officers.

10. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## Probable Cause

11. Since the Spring of 2018, Affiant and Detectives with the Cleveland Police Department's (CPD) Heroin Involved Death Investigation (HIDI) squad have conducted an investigation into the drug trafficking activities associated with

Tyler Matthew D'Juan HALL. HALL became a person of interest when the HIDI squad investigated three non-fatal opiate overdoses in which the victim's provided information that the drug suppliers phone number was 216-355-1927. Two of the victim's had additional information that the suppliers name was "Tyler" and that he resided, worked and sold drugs in the area of West 104th Street and Lorain Avenue.

12. On July 3, 2018, law enforcement executed search warrants at HALL's residence (10400 Lorain Avenue, Cleveland, Ohio, the "residence") and his business (3179 West 104th Street, Cleveland, Ohio, the "business"), an automotive body shop. At approximately 2:00 pm surveillance of the locations was established. At approximately 3:30 pm Person 1, believed to be HALL's romantic partner, was observed departing the residence in a familiar white Ford truck. Person 1 was followed and eventually stopped and detained prior to the execution of the search warrant. Person 1 advised HALL was present at the residence and denied any knowledge of drugs or drug trafficking activities at said locations. Person 1 had a cellular phone on her person, and nothing else of significance.

13. At approximately 4:00 pm, surveillance units observed HALL walk into the business location. Teams were briefed and the search warrants were executed. CPD SWAT was utilized to execute the warrant at the residence and all other investigators executed the warrant at the business. No individuals were present in the residence. HALL was present at the business in the garage area,

and was detained soon after law enforcement made entry. He was advised of his Miranda Rights, and he made no statements.

14. On HALL's person were two cellular telephones, a set of keys, and $1,152 in U.S. currency. Those keys included a key that unlocked the door of the residence, and a key that unlocked the door to the business.

15. While at these locations, Person 2, the owner for both locations arrived and inquired about the police presence. Person 2 advised HALL was the lessee of both locations and his monthly rent was $2,200 per month for both locations.

16. Among the numerous items seized from the residence were materials found at a "station" that was set up in plain view in the bedroom/living area: a desk where drugs were being prepared and packaged. Found on that station was 1.46 grams of fentanyl, 22.13 grams of crack cocaine, razor blades, a scale, packaging material (of types typically used to package crack cocaine and to package heroin and fentanyl), a Walther Model PPX 9mm semiautomatic pistol, and approximately $6,000 in U.S. currency. Also of significance were two bullet proof vests found in the same room. Said controlled substances were analyzed by the Cuyahoga County Regional Forensic Science Laboratory and confirmed to be said controlled substances and weights on July 16, 2018.

17. Based on my training and experience, the materials found at and near the station indicate that HALL was using this desk to prepare and package narcotics for sale.

18. Based on my training and experience, 22.13 grams of crack cocaine is a distribution quantity of crack cocaine. A user would normally purchase approximately 1 gram.

19. Among the items seized from the business was a bag found just outside the rear door of the garage area (in immediate area where HALL was apprehended), which contained a loaded 9mm Beretta Model 92FS semiautomatic pistol and 30.78 grams of marijuana, also confirmed by Cuyahoga County Regional Forensic Science Laboratory. Also inside the bag was an electric bill and receipt in HALL's name for the business address. Additionally, via pole camera footage, HALL can be seen carrying this same bag between his residence and business on multiple occasions.

20. In the months leading up to the search, during physical surveillance and through electronic surveillance by means of a pole camera, Investigators have observed that HALL appears to be present at the residence and business on a daily basis. HALL lives at the residence and spends significant periods of time at the business.

## Conclusion

21. Based upon the evidence and the facts set forth in this affidavit, I submit that there is probable cause to believe that on or about July 3, 2018 in the Northern District of Ohio, Eastern Division, Tyler Matthew D'Juan HALL knowingly and intentionally possessed with intent to distribute, a controlled

substance (crack cocaine, a schedule II controlled substance), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

Further Your Affiant Sayeth Not

*[signature]*
Kevin T. Borchert
Special Agent
Drug Enforcement Administration

Sworn to via telephone after submission by reliable electronic means. Fed. R. Crim. P. 3, 4(d), and 4.1.

*[signature]*
Jonathan D. Greenberg
United States Magistrate Judge
Northern District of Ohio